Good morning, Your Honors. Frank Weiser on behalf of the appellants. There are three principal arguments that are being advanced by the appellants why the summary judgment should be reversed. Two have to deal with the prospective relief under 42 U.S.C. 1983, which was permitted in theory by the first Patel decision, the published decision, Patel v. CITY OF SAN BERNARDINO. One has to deal with the retrospective relief under 42 U.S.C. 1983, which was denied in the first Patel decision based on the Federal Tax Anti-Injunction Act. And I might add that the prospective relief also was found in Patel 1 as an exception to the Federal Tax Anti-Injunction Act because of the fact that the original decision in the State court did not allow injunctive relief of the ordinance that was declared to be unconstitutional. The first argument as to the prospective relief — They were the tax collectors. They are the ones who are collecting the tax. They are the ones who are doing it under threat of criminal prosecution. They are providing services to the city. They're doing it on a patently, facially unconstitutional ordinance. They've spent time. They were audited. They were, in some cases, threatened by the city. We believe this — Well, but what we have here is an ordinance that was found to be patently unconstitutional on its face. Skip the adverb. It really doesn't change anything. It was found unconstitutional and it was immediately replaced. Now, you're arguing there was a gap between when it was determined to be unconstitutional and replaced, but is that all we're talking about, the cost of collecting the tax? Well, there were services provided. They have to keep books. They have to — I trust they keep books anyway. I mean, they have other tax obligations to other units of government, so presumably they keep track of their income and expenses and so forth. They're subject to odds. They're subject to criminal prosecution. They don't. And it seems to me that the government has a duty that if they are going to require them to do that, they do that under a constitutional tax. So I believe that there is a theory here, and I would add some kind of a takings theory in terms of the services that they provide. But that was not the issue — Well, they're providing the same services whether the tax is constitutional or unconstitutional. So if you want to bring a takings claim for involuntary servitude, I guess you can do that, but I'm not sure the constitutionality of the tax speaks to that issue. Well, that was not the issue. The issue of what theory, in fact, that they were basing their damages on was not an issue before the district court in the summary judgment motion. And certainly I think that could be sufficiently addressed if we got to that point. I think the issue here was — We just — you know, we're looking at the realities of the situation, and so we're asking those questions. You're not asking that this tax be reimbursed to all the folks that occupied the hotels or the motels, are you? Correct. Are you looking for that? No, we are not. We're not asking for tax refunds. In this suit, this was not an issue of tax refunds. Yeah. Okay. This was a suit based on 42 years in 1983 for tort damages. So it definitely wasn't tax refunds, and that goes to the issues here of what we were talking about, about the relief sought. The first argument that we advanced was the issue of the prospective relief based on when this ordinance actually, the new amended ordinance, took effect. Let me kind of go through some of this with you. Would you mind? Sure. Because this can be kind of a puzzle. Now, the California Court of Appeals found that the old law was unconstitutionally vague. Correct. And because the sections contained in that old law did not adequately distinguish between a person living from day to day or week to week in a motel and an apartment dweller living under a month-to-month tenancy. So they found it invalid. Now, the Court of Appeals decision in this case was issued on November 18, 1997. Is that right? Correct. Okay. And your clients, the hotel owners, argue that that decision was final on December the 19th, 1997. In the Court of Appeals, correct. In the Court of Appeals. And so you argue that the law was invalid on December the 19th, 1997. Correct. Okay. And then the California Supreme Court denied the petition for review on February 3, 1998. Correct. Okay. And the California rule of court, 29.4, tells us that denials of petitions of review are final upon filing. And now, we don't know the exact date of the petition. The exact time that that denial was filed. But the law was invalid then sometime on February the 3rd, 1998. Correct. All right. Now, then the California Court of Appeals issued its remitter on February the 3rd, 1998. That's correct, Your Honor. Okay. And then we know that after the petition for review was denied, the California Supreme Court sent the file back to the Court of Appeals. And that's like the California Supreme Court, in a sense, issued its mandate. Is that right? The remitter issues from the Court of Appeals. In other words, the California  Supreme Court denies the petition, and then after the petition is denied, then the California Court of Appeals issues the remitter, and then jurisdiction vests back into the Supreme Court. All right. And we look at these dates. And then the Court of Appeals sends the matter back to the trial court. And the Court of Appeals, okay, and then the city is arguing that the law was invalid on February the 9th, 1998. I believe that's the city's position. Yeah. But the law was invalid when that ruling of invalidity was final when the Supreme Court sent the matter back to the third 1998. I believe it is not only was it invalid at that point, it was invalid prior. Let me ask you. Are you aware of 29.4 California Rule of Court? I don't think it was cited in the brief. Well, it wasn't cited in the brief. No, I don't. I don't. But I believe what I mean, are you hearing about it for the first time here? I think so, Your Honor. But I believe my position was that California Rule of Court 24B1, it was... Okay. Now, the new law went into effect on February the 4th, 1998, because the California Constitution tells us that initiatives go into effect the day after the election, unless the initiative itself states otherwise. And the initiative here did not state otherwise. It did state otherwise, Your Honor. That's that little typewritten thing on the top. But in the body of the text of the ordinance itself, the body of the text of the ordinance itself, it said that the ordinance would not be effective unless voted on prior to the fiscal year of June 30th, 1998. And in fact, the city attorney analysis by Mr. Penman advised the voters... Let me, okay. Now, let me look at that piece of paper here. In saying it had to be voted on by a given date, it didn't say it wouldn't be effective until after that date. But Mr. Penman's analysis, the city attorney analysis, which is the contemporaneous construction, advised the voters that a no vote would have a fiscal impact beginning July 1st, 1998, the beginning of the fiscal year. Actually, what it says is the impact on the fiscal year beginning July 1, 1998, would be a given amount, measuring the amount by the fiscal year. That doesn't necessarily say that it would be an effect or that damage or that loss would be suffered only for that fiscal year. It would obviously be suffered for subsequent years as well, and it doesn't say it wouldn't be suffered before that date. But taking that in conjunction with what I indicated in the text of the ordinance and what's typewritten in the ordinance about the effective date... Let me speak. My fundamental problem with your argument is that I can't understand why anybody would think the city would want to delay the effective date of the tax. I think what... Is there any reason the city would want to delay the effective date? And I think there was. I think because of the fact that they were challenging the Court of Appeal opinion. I think they had taken up the issue of whether they were going to challenge it up before the California Supreme Court had thought that there was a good chance, and I think the California League of Cities had joined in, that the California Supreme Court would grant review. And that they did not want to have the tax... Well, that's a routine matter. People keep, you know, generally ask for, file a petition for review of the California Supreme Court, right? Correct. Yeah. I mean, you do that, wouldn't you, for your client? Correct. But I think their belief was until, in fact, the California Supreme Court ruled on the matter, they would still have the old ordinance in place and that they believe that if the California Supreme Court accepted review and reversed, why replace it with the new ordinance? So I think they gave themselves sufficient time, and the sufficient time was based on the timing on the fiscal year. That referendum wasn't scheduled. We have a coincidence of dates here that I take to be a coincidence, because you can't schedule a referendum on 24-hours notice or anything like that. So they've got this referendum going out or this ballot measure going out in this early February election scheduled sometime before that. So why would they put that up? Would they run the risk of not having a tax be effective immediately and voluntarily push it back to July 1st? What possible benefit is there to the city in doing that? Because once they adopt the new tax, if they believe the tax took effect immediately, they, in fact, would be mooting out the question about challenging the old tax. Once they schedule the ballot measure, they've done that. I mean, how are they going to pull back? Suppose the California Supreme Court grants the petition for review in March sometime. Then what? But if the effective date is not till subsequent till after the review, and I think they could ask the California Supreme Court, number one. The ballot measure doesn't say that this is contingent upon the California Supreme Court ruling against us. The ballot measure's there. It's been passed. That's a done deal. Yeah. It's been passed, but not effective. I mean, the district court itself. No, but not effective. And what difference does that make? Because it's still going to become effective July 1st, no matter what. And if you take that road, you leave the city with the possibility that, gee, they don't win before the California Supreme Court. We're exposed. Well, I don't know what the mechanism would be that once they have it adopted by the voters, whether, in fact, the city council could somehow pass a resolution that would somehow stay the effective date beyond that while the California Supreme Court was reviewing it, or if the California Supreme Court could be asked to stay the matter pending review. And I don't think that was addressed in any way in any of the papers. You know, you're talking about this, what is it, June or July date. I don't see it over here, you know. Where is it in the file? It's in the text of the ordinance that was submitted in opposition to the summary judgment. And the text of the ordinance on the very top page, the first page in the left-hand corner, had adopted date effective June 30th. If adopted February 4th by voter approval, February 4th, 1998. Well, I see that's what someone typed up on top. Right, correct. It was the same thing I talked to you about. It says, yeah, adopted November 17th, 1997, effective June 30th, 1998, if approved by a majority of voters on 2398. Right? But that's not part of the ordinance. The district court found... That statement is not part of the ordinance. It looks like something that was typed there by the county clerk. It's a contemporaneous construction of the ordinance, which is allowed under the California Supreme Court side of the Rossi case, which is allowed to be used as evidence. How do we know it's a contemporaneous construction of the ordinance? This was a certified copy that was obtained from the city clerk after the adoption of the ordinance by the voters. This was something that I went down to the city clerk and asked for a certified copy that was on file pursuant to their city charter that was required to be on file, and that was obtained as a certified copy. And the district court found... You know, right below it says ordinance number MC1006, and then you got the ordinance. But that's not part of the ordinance. The ordinance is what follows after that heading of ordinance number MC1006. The district... Who put that language on there? That's part of the city clerk's language that's in there. That's part of the ordinance. But that's part of the ordinance that the city clerk has the duty... The city clerk doesn't pass ordinances. The district court found there was a finding of fact in the summary judgment motion. And the district court found that the city had a policy, because we had submitted other ordinances that the city had, in fact, TOT ordinances, that the city had a policy and the city clerk had a policy... The city had a policy that in ordinances that were passed, that they would have the adopted date and the effective date typed in. The city clerk doesn't have the power to decide what the effective date is. That's a classic legal issue. And the state law suggests that something adopted in a ballot measure goes in effect immediately unless the city decides otherwise. But the city clerk or the functionary within the city clerk's office who types that isn't the person that decides or demonstrates what the city's intent is. But the city clerk is the one who has the duty to record what the contemporary's construction is of the ordinance by the city council. And it's a reasonable inference to assume that the city clerk has done that and there's a policy to do that. The city clerk is, in fact, recording what the intent of the council was, when this would go in effect. That's the ordinance that a voter would go to, to look at the ordinance to determine what he was voting on. Now, if a voter goes there and sees on the ordinance that it's going to have an effective date of June 30th, 1998, is the voter to assume that that, and that's a certified copy on file, is the voter to assume that that's incorrect? It seems to me that... I don't think that... Do we assume a whole lot of voters went to check out the effective date based on what the city clerk's functionary typed? The voters don't have a hard time inferring the city's intent based on that. The voters did not have the ordinance in front of them when they voted. What they had was is they had the city attorney analysis and the ordinance is on file. They have the right to go down to the clerk, look at the ordinance. They look at the ordinance. They see a certified copy under penalty of perjury that is the correct ordinance, and they see that date. It seems to me that that is what the voters voted on. What the voters had in front of them was a ballot measure asking should the ordinance blah, blah, blah, blah, be approved so as to permit the city of San Bernardino to continue to collect and use the transient lodging tax. That's not something that says to stop collecting it for 4 months and then start again come July 1st. What? Continue to collect. And I think the only reasonable inference I can see from that is that the city anticipated it would continue to collect, not take a 4-month hiatus. And why the city would want to take a 4-month hiatus is the question that I asked at the beginning, and I still didn't hear a very satisfying answer. So that's the problem I got with your case. Well, once again, it's my belief that the timing here was timed with the fact that they were seeking, they were going to seek review with the California Supreme Court. And I believe that they wanted the old ordinance in place until they had sufficient time for the California Supreme Court to make a determination one way or the other. And so it seems to me that there is not, it's not illogical to assume here that the city wanted the ordinance, the old ordinance in place, for sufficient time beyond the adoption date. Even at the risk of not collecting the money? They had a policy. We have submitted... Answer that. Even at the risk of not collecting the money? I think this says it's $1.6 million per year, so we're talking 4 or 5 months. You're talking several hundred thousand dollars, and you're saying the city's going to forego the $700,000 in hopes that the California Supreme Court will grant the petition for review? That's under the assumption that the old ordinance is still not effective, and, in fact, the city's not collecting money under the old ordinance. But they, in fact, were collecting money under the old ordinance. So... And, in fact, the evidence that we proffered... They collected money under the old ordinance until, you know... Well, what they collected under the old ordinance was the exact same amount that was collected under the new ordinance, right? Correct. Okay. So the way I look at these dates, the old ordinance was invalid sometime on February the 3rd. The new ordinance became effective on February the 4th. Well, my position is, is that the old ordinance was final for a judgment, a binding judgment between the parties, if it was a public... So if you got any... a claim whatsoever, you're talking about a few hours between the time the... the... the old ordinance was invalid and the new ordinance kicked in on the next day. There are different forms of the claim. The first, what we're arguing is, is when it became final in the Court of Appeals, you had a published opinion, which is a judgment. And that judgment, barring a stay from the California Supreme Court, is binding... What counts, what counts, you weren't aware of 29.4. What counts is, is what is in the California Rule of Court 29.4, because this case went up to the Supreme Court on a petition for review. Till that time, though, but they... It went up on a petition for review. But that's for purposes of the remitted or in jurisdiction, but for purposes of the... of the... of what binds the parties as precedent. People rely on the published opinion in the San Bernardino case as precedent. The parties have a judgment that's final in the Court of Appeals. But they know that the case went up to the Supreme Court on a petition of review. And, uh, and, uh, they know that, uh, that the, uh, that the judgment is not final, uh, until the, uh, until the Supreme Court denies the petition. And that was on February the 3rd, 1998. That's now how I read, based on California's Rule of Court 24b-1. I would like to add, though... But we're dealing with 29.4. And I'm saying that that is... That's a jurisdictional, um... Okay. That deals with jurisdiction in the issuance of the remitter. The final argument we had, which is irrespective of the issue of the effective date of the ordinance, goes back to the broader issue of whether we're allowed retrospective relief and whether it's barred in general by the Federal Tax Anti-Injunction Act. Um, and that is based on intervening, subsequent intervening, Supreme Court's authority in Hibbs v. Wynne. And this circuit itself in the, uh, May Company Trucking case said that after Hibbs, the dispositive question in determining whether the act's jurisdictional bar applies is whether federal court relief would have operated to reduce the flow of state tax revenue. In the Hibbs case, the Supreme Court said, in sum, this court has interpreted and applied the Tax Anti-Injunction Act only in cases Congress wrote the act to address, cases in which state taxpayers seek federal court orders enabling them to avoid paying state taxes. Um, the Patel 1 decision found that we had met the first prong of the fair assessment requirement. We didn't go into court, into federal court, and try to invalidate the, um, the, uh, state ordinance, the state tax ordinance first. We went ahead, we got a declaratory judgment invalidating the ordinance in the, in the state tax courts, and then sued for damages. So the fair, the Patel case itself, our Patel case here before this Court, found that we were, it was a, it was a novel question because we were considerably less intrusive, um, than what fair assessment was talking about because fair assessment said you had, and explicitly said, we have your argument well in hand. You have three minutes over time. Let's, let's hear from, uh, from the other side. Sure. See how the government saves money. They give us a bottle of water. I've got very strong hands, but I'd need a, I'd need a pipe wrench to open this. I don't want to use my teeth. You have a pipe wrench? Chris Lockwood for the city. Just a few points I want to make. Um, the Court brought up the Rule 29.4. I didn't look at that in particular, though my recollection is that the Rules of the Court have been revised since 1998, and I think it might have been slightly different at the time. I don't think it matters either way, though. Um, I cited two lines of cases holding the term of date is not the date of the opinion or the date it becomes final, but the date the remittance is issued. We have one line of cases involving militia prosecution and a second line of cases involving stays, and both of them say that the Court of Appeal decision doesn't take effect until the remittance itself is issued, and that happened Until when? Until the remittance is issued, and that happened about two weeks after the election. Yeah, but what about the Supreme Court? You weren't aware of that section, were you? That particular rule I was not. Well, that's why that's why we have law clerks that get in on and get us all this good stuff, see? And, uh, so you're unaware of it, and it's pretty clear. That ended It says it becomes final the day it's filed. Correct. That does not mean it's over. If you look at the same, it's a similar rule concerning What do you mean it doesn't mean it's over? You know, the Supreme Court issues a ruling it's final, it's not over? As to the Supreme Court, it's over. There's actually a very similar rule involving courts of appeal. It says it becomes final as to the court of appeal 30 days after the I know, after the meditator, but Well, no, it's just 30 days. But then you've got the Supreme Court rule. Okay. Have you looked in Witkin for this? On that particular issue? No, I did not. So you've got to look at Bernie's book. I do pretty often. The Bible. I do often. If the case had never gone to the Supreme Court in the first place, however, there's still a rule that says it doesn't become final as to the court of appeal until 30 days after the opinion. After that happens, there's still time for a miniature issue. And there's two lines of cases holding it doesn't take effect until a miniature. The fact that you have intervening Supreme Court doesn't change the rule. It still doesn't take effect. It's not a binding. It doesn't have to be followed until there is the miniature itself issued. There's the militia prosecution and stay cases and both of them stay. Both of them stay explicitly. It lasts until the miniature even when you have Supreme Court petition intervening in there. Even if, however, the effective date is the Supreme Court, as the court pointed out, we're talking about a few hours, which is as subminimous as you can possibly get. There's some questions asked about damages. The only change that was made between the old ordinance and the new ordinance was a clarification of exactly who was subject to the ordinance and exactly which kind of establishments have to collect it. But there was never any allegation in this case and never suggestion of any evidence that the particular plaintiff in this case ever had any dispute about whether they were in fact an establishment they had to collect and there's never any allegation or any evidence that the people that they ran into were in fact subject to the ordinance under the old version or the new one. So the only possible basis for damages would be if there was some ambiguity and they collected it from somebody they should have collected it from. They didn't make that allegation. So it just is not a relevant question in this case. For injunctive relief you can get damages based on uncertainty because you should have certain ordinances. To get damages you've got to prove the uncertainty actually cause some problems. They didn't allege that. They didn't try to prove it. So I don't think it actually matters. There were some questions about the type date. If you look at page 269 of the record there's a declaration by the person who typed it. It's an incorrect date. The clerk doesn't have the power to make that decision. To be precise that declaration is by the clerk herself. And that notes I did not type this notation. One of my staff did. So it's really not by the person who typed it but it's also not the role of the clerk to make the decision. I think when you put this through, the first opinion left a narrow window on the question of whether there was any gap between the old and the new one. The second opinion left a narrow window on the question of whether there was any gap between the old and the new one. The third opinion left a narrow window on the question of whether there was any gap between the old and the new one. The fourth opinion left a narrow window on the question of whether there was any gap between the old and the new one. The fifth opinion left a narrow window on the question of whether there was any gap   old and the new one. The sixth opinion left a narrow window on the question of whether there was any gap between the old and the new one. The seventh opinion left a narrow window on the question of whether there was any gap old and the new one. The eighth opinion left a narrow window on the question of whether there was any gap old and the new one. The ninth opinion left a narrow window on the question of whether there was any gap old and the new one. The tenth opinion left a narrow window on the question of whether there was any gap old and the new one. The  opinion left a narrow window on the question of whether there was any gap old and the new one. The twelfth opinion left a narrow
judges: Pregerson, Gould, Clifton